LEHIGH VALLEY R. CO. v. PROVIDENCE-WASHINGTON INS. CO.

(District Court, S. D. New York.   October 10, 1908.)

1. INSURANCE (§ 336*)—MARINE INSURANCE—POLICY PROVISIONS—CONSTRUCTION—"EXISTING INSURANCE."

Where a carrier's marine policy provided that it did not cover or apply to any goods or merchandise on which there should be any existing insurance by or on account of the owners thereof, the term "existing insurance" included any other insurance during the continuance of the risk, which was valid and enforceable, and was not limited to insurance by the owner existing at the time the carrier's policy attached.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 856; Dec. Dig. § 336.*]

2. INSURANCE (§ 622*)—MARINE INSURANCE—ACTION—CONTRACT—LIMITATION.

Where a carrier's marine policy contained a contract limitation of actions thereon of one year, and suit was not brought by the carrier for the loss sustained until after the year had expired, the action was barred, though defendant had agreed to bear part of the loss and had not refused to pay under such clause, and the amount of the carrier's liability to the owner of the property was not adjudicated until after the year expired.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1544; Dec. Dig. § 622.*]

In Admiralty.

Robinson, Biddle & Benedict, for libellant.

James J. Macklin, for respondent.

ADAMS, District Judge.   This action was brought by the Lehigh Valley Railroad Company against the Providence-Washington Insurance Company to recover its loss under an open policy of insurance, made and issued by the respondent to the libellant on or about the 15th of November, 1902.   The policy insured the libellant as owner, freighter, forwarder, bailee or common carrier on all kinds of grain and flax seed on board of barge or other vessel.   During the month of December, 1902, and January, 1903, certain wheat was loaded and stored by the libellant, acting as common carrier, on the canal boat A. J. Dean and on the 23rd day of January the said boat was taken in tow by the steamtug Mercedes, owned by the libellant, to be taken to the Prince Line steamer Trojan Prince, then lying at the foot of 42nd Street, Brooklyn.   Shortly after being delivered at her destination the boat sank, owing to a hole having been knocked in her by ice during the towage, whereby the wheat sustained serious damage. Shortly afterward an action was brought in this court by Herbert Bradley, as assignee of the owner of the wheat, against the libellant herein to recover the damages sustained by him through the sinking. In September, 1904, the libellant served a notice on the respondent

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

calling upon it to defend if it wished, and that if it should be found that the damage was caused by any of the perils insured against, the libellant would look to the respondent for such sum as might be due under the policy, together with the costs and expenses incident to the defence of the action. The respondent, on the 16th of May, 1904, advised the libellant that it had no interest in the action or its results, and the libellant defended with the result that Bradley obtained a decree here, by reason of the tug's negligence. Bradley v. Lehigh Valley R. Co. (D. C.) 145 Fed. 569. The case was appealed and affirmed, but upon other grounds of liability than those found in this court. Id., 153 Fed. 350, 82 C. C. A. 426. A final decree was entered in the action, which required the libellant to pay the sum of $3,490.65, with interest thereon amounting to $6.98. The aggregate of these sums was paid by the libellant. In addition thereto, certain expenses were alleged to have been incurred, making a total claim of $4,322.53 with interest thereon from April 22, 1907. The foregoing are the allegations of the libellant, supplemented by a stipulation between the parties, entered into herein May 16, 1908.

The respondent, in addition to admitting or denying the principal allegations of the libel, alleged as follows:

"Eighth: Respondent further answering alleges that by the terms of the policy of insurance referred to in the libel it was therein provided that said policy should not cover or apply to any goods or merchandise upon which there should be any existing insurance by or on account of the owners thereof; and upon information and belief that at the time of the alleged disaster and loss there was then outstanding and in force existing insurance upon the cargo upon the said boat A. J. Dean referred to in the libel, by or on account of the owners of said cargo, by reason whereof the said policy became void and of no force or effect as respects the cargo on said boat A. J. Dean referred to in the libel herein and the respondent was not liable for any loss upon the said cargo.

Eleventh: Respondent further answering alleges, that in and by the terms of the policy referred to in the libel it was expressly provided, 'That no suit or action against said company for the recovery of any claim upon, under or by virtue of this Policy shall be sustainable in any Court of law or chancery, unless such suit or action shall be commenced within the time of twelve months next after the disaster causing such loss or damage shall occur; and in case any such suit or action shall be commenced against said Company after the expiration of twelve months next after the disaster causing such loss or damage shall have occurred, the lapse of time shall be taken and deemed as conclusive evidence against the validity of the claim thereby attempted to be enforced.' That the libel herein was not filed and this action was not begun until more than twelve months after the disaster causing the alleged loss or damage had occurred by reason whereof the respondent is not liable to the libellant herein."

1. The contract provided:

" * * * . Nor does this Policy cover or apply to any goods or merchandise upon which there shall be any existing insurance, by or on account of the owners thereof."

Before the loss occurred, the respondent claims that the owners of the grain, which was the subject of insurance, had effected insurance upon all of it excepting one car load, upon which the respondent promptly paid the insurance, but denied liability as to the remainder, upon which the owner had previously taken out insurance. The libellant contends that the insurance in question took effect when the

grain was loaded on the Dean on December 22, 1902, January 8, and January 15th, 1903, and therefore there was no existing insurance by the owner at the time the policy of the respondent attached. The respondent's reply to this is that there was insurance which covered the goods from interior points and it was therefore existing.

The respondent's contention appears to be correct. The phrase "existing insurance" has seemingly a broader meaning than the libellant contends for. Assuming that there was existing insurance, the agreement here was equivalent to one that there shall be no other insurance during the continuance of the risk, which was valid and enforceable. 19 Amer. & Eng. Ency. of Law, 1021.

2. The respondent further urges that there can be no recovery here because the action was brought too late. The disaster occurred on January 23, 1903, and this action was commenced July 26, 1907. The respondent's claim is that the time within which an action should be brought was definitely fixed as within twelve months. The language was as set forth in the 11th paragraph of the answer, quoted supra.

The libellant claims that this provision was waived, and, if not, that the time began to run only from the time the first decree on mandate was entered in the case of Bradley v. Lehigh Valley R. Co., which was April 10, 1907. It is contended that the loss was reported promptly and claimed, the respondent then taking the position that it was not liable because of the prior insurance mentioned above.

It is said in the case of Bradley, 153 Fed. 353, 82 C. C. A. 429:

"As is pointed out by Chief Justice Shaw, in Farlow v. Ellis, 81 Mass. 231, a waiver is the relinquishment of a right which otherwise the party making it would have enjoyed, and the voluntary choice on his part not to claim the benefit is of the essence of the waiver; and whether there has been a waiver is a question of fact, depending upon the intention of the party against whom the waiver is asserted."

There is no evidence of any intention on the part of the respondent to relinquish the defence now insisted upon.

It is argued that the respondent was even as late as August 4, 1903, willing to bear a part of the loss, and never based his refusal to pay on the clause in question. While this may be true, the language of the contract is too plain to admit of the claim of the libellant that the time only began to run at a period considerably subsequent to that fixed by the contract, which was the twelve months after the disaster occurred. The contract spoke very plainly for itself. It is further argued that if the libellant had sued within the year, there could have been no recovery because it had then paid nothing to the shipper whose property the goods were, and to give the clause the effect now contended for by the respondent, would have required payment by the libellant within the year. I see no merit in this contention. The contract required an action to be brought within a year, not that a judgment should be obtained and satisfied within the limited time. The rights of the libellant could have been preserved by exhibiting an intention within the year to enforce its claimed rights. This point of the case is covered by Luckenbach v. Home Ins. Co. (D. C.) 142 Fed. 1023, and authorities there cited.

The libel is dismissed.